# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Fatemah Azizian; Soraya Farrah;
Eunice Fey; Rose Gonzales;
Kazuko Y. Morgan; Nicola
Nelson-Torres; Monique Patrick;
Judith Pogran; Pamela Powell;
Shirley Powell; Rose Skillman
on behalf of themselves and all
others similarly situated; Hannah
Feldman; Nikki Hurst Gibson,
             *Plaintiffs-Appellees,*

Kamela Wilkinson,
                        *Appellant,*

Susan Casenza; Valerie Theng
Matherne,
        *Intervenors-Appellees,*

              v.

Federated Department Stores,
Inc.; Boucheron (USA) Ltd.;
Chanel, Inc.; Parfums Givenchy,
Inc.; Guerlain, Inc.; Christian
Dior Perfumes, Inc.; Conopco,
Inc.; L'Oreal USA, Inc.; The
Estee Lauder Companies, Inc.;
Clarins U.S.A. Inc.; Dillard's
Inc.; Target Corporation;

No. 05-15847

D.C. No.
CV-03-03359-SBA

10303

GOTTSCHALKS, INC.; SAKS
INCORPORATED; THE MAY
DEPARTMENT STORES COMPANY;
NORDSTROM, INC.; THE NEIMAN-
MARCUS GROUP, INC.,
            *Defendants-Appellees.*

FATEMAH AZIZIAN; SORAYA FARRAH;
EUNICE FEY; ROSE GONZALES;
KAZUKO Y. MORGAN; NICOLA
NELSON-TORRES; MONIQUE PATRICK;
JUDITH POGRAN; PAMELA POWELL;
SHIRLEY POWELL; ROSE SKILLMAN
on behalf of themselves and all
others similarly situated; HANNAH
FELDMAN; NIKKI HURST GIBSON,
            *Plaintiffs-Appellees,*

KAMELA WILKINSON,
                    *Appellant,*

SUSAN CASENZA; VALERIE THENG
MATHERNE,
            *Intervenors-Appellees,*

                    v.

FEDERATED DEPARTMENT STORES,
INC.; BOUCHERON (USA) LTD.;
CHANEL, INC.; PARFUMS GIVENCHY,
INC.; GUERLAIN, INC.; CHRISTIAN
DIOR PERFUMES, INC.; CONOPCO,
INC.; L'OREAL USA, INC.; THE
ESTEE LAUDER COMPANIES, INC.;

No. 05-16600

D.C. No.
CV-03-03359-SBA

OPINION

CLARINS U.S.A. INC.; DILLARD'S
INC.; TARGET CORPORATION;
GOTTSCHALKS, INC.; SAKS
INCORPORATED; THE MAY
DEPARTMENT STORES COMPANY;
NORDSTROM, INC.; THE NEIMAN-
MARCUS GROUP, INC.,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
March 14, 2007—San Francisco, California

Filed August 23, 2007

Before: Procter Hug, Jr., Melvin Brunetti, and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

**COUNSEL**

William F. Abbott, San Francisco, California; Kent F. Brooks, Dallas, Texas, for appellant Kamela Wilkinson.

John W. Allured, San Francisco, California; Gretchen M. Nelson, Los Angeles, California; W. Timothy Needham, Janssen Malloy Needham, Eureka, California; J. Garrett Kendrick, Kendrick & Nutley, Beverly Hills, California; John L. Burris, Oakland, California; Francis O. Scarpulla, Craig C. Corbitt, Zelle Hofmann Voelbel Mason & Gette, San Francisco, California; Susan G. Taylor, Milberg Weiss Bershad Hynes & Lerach, Joseph R. Saveri, Lieff Cabraser & Heimann, San Francisco, California; John H. Boone, San Francisco, California; Josef D. Cooper, Cooper & Kirkham, San Francisco, California; Terry Gross, Gross & Belsky, San Francisco, California; Guido Saveri, Saveri & Saveri, San Francisco, California; Alan R. Plutzik, Bramson Plutzik Mahler & Birhaeuser, Walnut Creek, California; Angelina Grace, Law Firm of Joseph M. Alioto, San Francisco, California; Daniel J. Mogin, Mogin Law Firm, San Diego, California; Michael J. Flannery, David Danis Law Firm, St. Louis, Missouri; Robert Diskint, Critchlow & Diskint, San Rafael, California, Ben Furth, Furth Firm, San Francisco, California; John J. Pentz, Class Action Fairness Group, Maynard, Massachusetts; Michael A. Caddell, Caddell & Chapman, Houston, Texas; Mary L. Needham, San Francisco, California, for the plaintiffs-appellees.

Phillip Aaron Proger, Amy Anne Stathos, Jones Day, Washington, D.C., Bruce H. Jackson, Baker & McKenzie, San Francisco, California; Peter J. Venaglia, Dornbush Mensch Mandelstam & Schaeffer, New York, New York; Terri Garland, Morrison & Foerster, San Francisco, California; Marta Miyar, Bingham McCutchen, San Francisco, California; George Charles Nierlich, Gibson Dunn & Crutcher, San Francisco, California; Bruce A. Colbath, Weil Gotshal and Manges, New York, New York; Jeffrey Knowles, Coblentz Patch Duffy & Bass, San Francisco, California; Frederic W. Yerman, Kaye Scholer, New York, New York; Michael W. Bien, Rosen Bien & Asaro, San Francisco, California; Charles Berwanger, Gordon & Rees, San Diego, California; James T. Fousekis, DLA Piper US, San Francisco, California; Anita

Fern Stork, Covington & Burling, San Francisco, California; Samuel R. Miller, Folger Levin & Kahn, San Francisco, California; Marlene J. Williams, Thelen Reid Brown Raysman & Steiner, San Francisco, California; Gregory Philip Farnham, Townsend Townsend & Crew, San Francisco, California; Matthew W. Hoffman, Elizabeth Runyan Geise, Goodwin Procter, Washington, D.C.; Ronald J. Dolan, St. Louis, Missouri; James L. McGinnis, Gary L. Halling, Shepherd Mullin Richter and Hampton, San Francisco, California; Larry Steven Gangnes, Lane Powell, Seattle, Washington; J. Thomas Rosch, Latham & Watkins, San Francisco, California, for the defendants-appellees.

Andrew James Kopp, Oakland, California; Steven B. Witman, Metairie, Louisiana, for the intervenors-appellees.

---

## OPINION

W. FLETCHER, Circuit Judge:

This appeal arises from a class member/objector's challenge to the district court's final approval of a settlement of the antitrust claims of a certified nationwide class of consumers of department store cosmetics. We must decide two questions.

First, as a matter of first impression, we must decide whether, or under what circumstances, appellate attorney's fees are "costs on appeal" that a district court may require an appellant to secure in a bond ordered under Federal Rule of Appellate Procedure 7 ("Rule 7"). We conclude that a district court may require an appellant to secure appellate attorney's fees in a Rule 7 bond, but only if an applicable fee-shifting statute includes them in its definition of recoverable costs, and only if the appellee is eligible to recover such fees. The fee-shifting provision in Section 4 of the Clayton Act, 15 U.S.C.

§ 15, includes attorney's fees in its definition of costs recoverable by a prevailing plaintiff. However, this provision does not authorize taxing attorney's fees against a class member/ objector challenging a settlement in an antitrust suit. Therefore, we hold that the district court erred by requiring security in the Rule 7 bond for attorney's fees as costs taxable under Clayton Act Section 4.

We further conclude that a district court may not include in a Rule 7 bond appellate attorney's fees that might be awarded by the court of appeals if that court holds that the appeal is frivolous under Federal Rule of Appellate Procedure 38 ("Rule 38").

Second, we must decide whether Appellant's appeal on the merits should be dismissed for failure to post the bond. In the circumstances of this case, we hold that it should not.

In a separate unpublished memorandum disposition, we reach the merits of the appeal and affirm the district court's approval of the settlement.

## I.   Background

Appellant Kamela Wilkinson is one of a large number of consumers who bought cosmetics products manufactured and sold by Defendants-Appellees. In July 2003, Plaintiffs-Appellees commenced, on behalf of these consumers, a nationwide, settlement-only antitrust class action lawsuit in the federal district court for the Northern District of California. They alleged that Defendants-Appellees had violated the Sherman Act and California's Cartwright and Unfair Competition Acts by "enter[ing] into and engag[ing] in . . . a contract, combination or conspiracy . . . to fix, raise, and stabilize the prices of Department Store Cosmetics and to limit the supply of Department Store Cosmetics." On March 30, 2005, the district court approved a settlement of all class claims. Wil-

kinson appealed from the final approval order on April 29, 2005.

In July 2005, Plaintiffs-Appellees sought an appeal bond of $12,833,501.80 under Rule 7. This amount included two times their estimate of anticipated (1) appellate costs, not including attorney's fees, recoverable under Federal Rule of Appellate Procedure 39 ("Rule 39") ($6,540.00), (2) appellate attorney's fees ($300,000.00), (3) interest on the settlement's $24 million attorney's fees award ($178,457.68), and (4) damages resulting from delay ($5,931,753.22). The district court ordered Wilkinson to post a bond in the amount of $42,000.00, representing an anticipated $2,000.00 in appellate costs taxable under Rule 39 and $40,000.00 in appellate attorney's fees. The district court noted that a split in circuit authority exists regarding whether attorney's fees are "costs on appeal" securable under Rule 7, and that this circuit had not yet addressed this issue. It concluded that the bond could cover appellate attorney's fees because (1) the fee-shifting provision in Section 4 of the Clayton Act, 15 U.S.C. § 15, defines attorney's fees as among the costs recoverable, and (2) "the Court of Appeals [was] likely to find that the instant appeal[ ] [was] frivolous."

On August 19, 2005, Wilkinson tendered $2,000.00 to the district court clerk, which was rejected. Wilkinson then moved the district court to reduce the bond amount. After the district court denied her motion, she appealed from that order. On September 19, 2005, Plaintiffs-Appellees filed a motion asking us to dismiss Wilkinson's appeal of final approval of the settlement, based on her failure to pay the Rule 7 bond. A motions panel of this court denied the motion on December 12, 2005, with leave to Plaintiffs-Appellees to renew their request for dismissal in their answering brief, which they have done.

## II. Discussion

[1] Federal Rule of Appellate Procedure 7, derived from former Federal Rule of Civil Procedure 73(c), provides that

"the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Wilkinson argues that the phrase "costs on appeal" does not include attorney's fees. Plaintiffs-Appellees contend that "costs on appeal" includes attorney's fees if they are described as "costs" by an applicable fee-shifting statute or if the appeal is likely to be found frivolous by the court of appeals.

Ordinarily, "[w]e review objections to the amount of a bond for abuse of discretion." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (as amended). However, the meaning of the phrase "costs on appeal" is a question of law that we review de novo. *See Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998). Similarly, we ordinarily review a district court's attorney's fees decision for an abuse of discretion. *See Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005). However, "any elements of legal analysis and statutory interpretation underlying the district court's attorney's fees decision are reviewed de novo." *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1232 (9th Cir. 2007) (quoting *P.N. v. Seattle Sch. Dist., No. 1*, 458 F.3d 983, 985 (9th Cir. 2006), *amended by* 474 F.3d 1165 (9th Cir. 2007)) (internal quotation marks omitted).

### A.  "Costs on Appeal" Under Rule 7 May Include Attorney's Fees

[2] Whether attorney's fees are part of "costs on appeal" under Rule 7 is a question of first impression in this circuit. Six other circuits are split on the question. An older, minority rule, used by the D.C. and Third Circuits and endorsed by the Wright, Miller & Cooper treatise, holds that the "costs referred to" in Rule 7 "are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorney's fees that may be assessed on appeal." *In re Am. President Lines, Inc.*, 779 F.2d 714, 716

(D.C. Cir. 1985) (per curiam) (footnote omitted); *see also* 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3953 (3d ed. 2006). The more recent, majority rule, adopted by the Second, Sixth, and Eleventh Circuits, holds that a district court may order security for appellate attorney's fees in a Rule 7 bond if they would be treated as recoverable costs under an applicable fee-shifting statute. *See In re Cardizem CD Antitrust Litigation*, 391 F.3d 812, 817-18 (6th Cir. 2004); *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1329-30 (11th Cir. 2002); *Adsani*, 139 F.3d at 71. Finally, the First Circuit has held that a district court may require a Rule 7 bond covering appellate attorney's fees if it concludes that the court of appeals might award attorney's fees as costs under Rule 38 because the appeal is frivolous. *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (per curiam).

The D.C. Circuit appears to have been the first court of appeals to address the question. In *In re American President Lines*, the district court ordered a $10,000 Rule 7 bond including security for appellate attorney's fees. 779 F.2d at 715-16. The court of appeals remanded to the district court for a "statement of its reasons for setting the bond at $10,000." *Id.* at 716. On remand, the district court gave four reasons: first, a portion of the bond was proper under Rule 7; second, the district court had acted within its " 'inherent or rule-based power to require a plaintiff with no assets in the court's jurisdiction to post a bond before proceeding with what appears to be a frivolous suit' "; third, the appeal "likely would be found to be frivolous" under Rule 38; and fourth, the appellant's failure to pay attorney's fees assessed against him in the underlying bankruptcy proceeding increased the need for security on appeal. *Id.*

The D.C. Circuit rejected each of these reasons and reduced the amount of the bond to the amount of costs recoverable under Rule 39. First, the court concluded, without discussion, that the definition of the term "costs on appeal" in Rule 7 is

synonymous with the "costs" listed in Rule 39. *Id.* Therefore, "[t]he costs referred to [in Rule 7] . . . are simply those that may be taxed against an unsuccessful litigant under [Rule] 39, and do not include attorneys' fees that may be assessed on appeal." *Id.* Second, the court rejected the argument that a district court may order payment of attorney's fees in an appeal bond under its "inherent power," *see* Fed. R. Civ. P. 83, observing that such power "really adds nothing to the authority already conferred by Rule 7." *In re Am. President Lines*, 779 F.2d at 717. Third, the court wrote that a bond for attorney's fees is not "a legitimate means of protecting . . . against the possibility that [an] appeal might turn out to be frivolous." *Id.* According to the court, this function would be better served by "[t]he traditional countermeasure for an appeal thought to be frivolous" — a motion to dismiss, "which is available at the outset of the appeal and before expenses thereon begin to mount" — or by a motion for sanctions under Rule 38. *Id.* When a district court requires a bond order that includes attorney's fees on the ground of frivolousness, it "effectively preempts [the circuit] court's prerogative to determine . . . whether [the appellee] is entitled to a Rule 38 recovery" and may "impermissibly encumber" the right to seek appellate review. *Id.* at 717-18. Fourth, the court indicated that any concerns about the appellant's ability to pay should have been addressed by a supersedeas bond (a bond imposed as a condition of staying the execution of a judgment) rather than by a Rule 7 bond. *Id.* at 717.

Two years later, the First Circuit, without discussing *In re American President Lines* or examining the language, purpose, or history of Rule 7, upheld a bond including attorney's fees on the ground that the district court "implied a view" that there was "a real possibility" the appeal would be found frivolous and sanctions would be ordered under Rule 38. *Sckolnick*, 820 F.2d at 15.

Ten years passed before the meaning of "costs on appeal" again received substantial appellate attention. Then, the Third

Circuit, in *Hirschensohn v. Lawyers Title Insurance Corp.*, No. 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997), an unpublished opinion, approved of the holding of *In re American President Lines*. The court held that the district court erred in requiring security for anticipated appellate attorney's fees that might be awarded under a fee-shifting provision in a Virgin Islands statute. *Id.* at *1-3. Like the D.C. Circuit, the court concluded that " '[c]osts' referred to in Rule 7 are those that may be taxed against an unsuccessful litigant under [Rule] 39," and that "attorneys' fees are distinct from the 'costs' defined by Rule 39." *Id.* at *1-2. According to the court, this approach is consistent with "the prevailing 'American rule' " under which attorney's fees are not recoverable costs. *Id.* at *2 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759 (1980)).

The court briefly noted *Marek v. Chesny*, 473 U.S. 1 (1985), but did not regard it as controlling. 1997 WL 307777, at *2. *Marek* had not been discussed or cited by either the D.C. Circuit in *In re American President Lines* or the First Circuit in *Sckolnick*.

In *Marek*, the Supreme Court held that the term "costs" in Federal Rule of Civil Procedure 68 — which shifts to the offeree all "costs" incurred subsequent to an offer of judgment if the judgment finally obtained is not more favorable than the offer — includes attorney's fees awardable under 42 U.S.C. § 1988, which authorizes the district court to "allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *Marek*, 473 U.S. at 9. The Court observed that, notwithstanding the American rule, "[b]y the time [Rule 68] [was] adopted . . . , federal statutes had authorized and defined awards of costs" to include attorney's fees "for more than 85 years." *Id.* at 7-8. It concluded that by not defining the term "costs," the drafters of Rule 68 likely "intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Id.* at 9. "Thus, absent congressional expressions to the contrary,

where the underlying statute defines 'costs' to include attorney's fees," the Court was "satisfied such fees are to be included as costs for purposes of Rule 68." *Id.*

One year after the Third Circuit's decision in *Hirschensohn*, the Second Circuit reached the opposite result from the D.C. and Third Circuits, holding that a district court may include security for attorney's fees in a Rule 7 bond so long as an applicable fee-shifting statute "explicitly authorizes attorney's fees 'as part of the costs' . . . upon appeal." *Adsani*, 139 F.3d at 74. The district court had ordered the plaintiff-appellant, whose copyright infringement and state law claims had been dismissed, to post a $35,000 bond under Rule 7 that included security for appellate attorney's fees that might be awarded under the Copyright Act, 17 U.S.C. § 505. *Id.* at 69-70. Relying on *Marek*, the court affirmed, holding that "Rule 39 does not exhaustively define 'costs' " on appeal. *Id.* at 74. According to the court, "Rule 7 does not have a pre-existing definition of costs any more than Fed. R. Civ. P. 68, the rule interpreted in *Marek*, had its own definition." *Id.* The court noted that the Supreme Court in *Marek* had mentioned the Copyright Act as among the federal statutes that "provide[ ] for attorney's fees 'as part of the costs.' " *Id.* at 73.

In *Pedraza*, the Eleventh Circuit followed *Adsani* in holding that a Rule 7 bond may include appellate attorney's fees if they could be recoverable to the appellee under the governing statute. 313 F.3d at 1329-30. The district court had ordered six objectors to a class settlement under the Real Estate Settlement Procedures Act ("RESPA") to pay a $180,000 Rule 7 bond, comprised mostly of security for anticipated appellate attorney's fees. *Pedraza*, 313 F.3d at 1325, 1327-28. The court of appeals agreed with the Second Circuit's analysis in *Adsani*, but concluded that the district court had erred insofar as its bond order rested on RESPA. *Id.* at 1333-35. In contrast to the civil rights and copyright fee-shifting provisions at issue in *Marek* and *Adsani*, RESPA's fee-shifting provision does not provide for recovery of attor-

ney's fees "*as part of the costs*" but instead authorizes award of "costs of the action *together with* reasonable attorneys fees." *Id.* at 1333-34 (emphasis in original) (comparing 42 U.S.C. § 1988(b) and 17 U.S.C. § 505 with 12 U.S.C. § 2607(d)(5)). The court pointed to the Supreme Court's statement in *Marek* that "where the underlying statute *defines 'costs' to include attorney's fees*" they could "be included as costs for purposes of Rule 68." *Id.* at 1334 (quoting *Marek*, 473 U.S. at 9) (emphasis added in *Pedraza*).

In *Young v. New Process Steel, LP*, 419 F.3d 1201 (11th Cir. 2005), the Eleventh Circuit followed *Pedraza* but reversed a Rule 7 bond securing appellate attorney's fees ordered against plaintiffs-appellants in a civil rights case under 42 U.S.C. § 1988(b). *Id.* at 1202. Although § 1988(b) "expressly allows the court to award the prevailing party 'a reasonable attorney's fee *as part of* the costs,' " *id.* at 1204 (quoting 42 U.S.C. § 1988(b)) (emphasis added in *Young*), the court held that the bond was improper. *Id.* at 1207-08. It explained that courts must look beyond the mere fact that a fee-shifting provision defines attorney's fees as part of costs, to whether the statute could actually support an award of fees to the appellees. *Id.* at 1204. The court noted that while "the language of § 1988 is itself party-neutral," the Supreme Court has restricted the award of attorney's fees to defendants under the statute to exceptional cases where " 'the plaintiff's action was frivolous, unreasonable, or without foundation.' " *Id.* at 1205 (quoting *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978)). Because the district court had not made a determination that the defendant-appellee was actually likely to be able to collect attorney's fees on appeal under § 1988(b), the court concluded that the bond order was improper. *Id.* at 1207-08.

The Sixth Circuit has recently adopted the reasoning of *Adsani* and *Pedraza* in *Cardizem*, holding that a Tennessee statute shifting fees to prevailing defendants supported including attorney's fees in a Rule 7 bond. 391 F.3d at 817-18.

**[3]** We agree with the Second, Sixth, and Eleventh Circuits and hold that the term "costs on appeal" in Rule 7 includes all expenses defined as "costs" by an applicable fee-shifting statute, including attorney's fees. We do so for a number of reasons. First, Rule 7 does not define "costs on appeal." At the time of its adoption in 1968, however, a number of federal statutes — including the Clayton Act — had departed from the American rule by defining "costs" to include attorney's fees. *Marek*, 473 U.S. at 8-9. Courts had long awarded appellate attorney's fees to prevailing parties under these statutes. *See, e.g.*, *Am. Can Co. v. Ladoga Canning Co.*, 44 F.2d 763, 772 (7th Cir. 1930) (Clayton Act Section 4); *Louisville & N.R. Co. v. Dickerson*, 191 F. 705, 712 (6th Cir. 1911) (Interstate Commerce Act § 16). Because "[a]gainst this background of varying definitions of 'costs,' [Rule 7's] drafters . . . did not define the term," we conclude that they likely "intended [it] to refer to all costs properly awardable" at the conclusion of the appeal, including attorney's fees authorized by relevant statutory authority. *Marek*, 473 U.S. at 8-9.

Second, Rule 39 does not contain any "expression[ ] to the contrary." *See id.* at 9. There is no indication that the rule's drafters intended Rule 39 to define costs for purposes of Rule 7 or for any other appellate rule. The 1967 Rules Advisory Committee note to Rule 39(e) states that "[t]he costs described in this subdivision are costs of the appeal and, as such, are within the undertaking of the appeal bond." Fed. R. App. P. 39(e) advisory committee's note (1967 adoption). We read this language to mean that the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal. Further, Rule 38 provides that the court of appeals may award "damages and . . . costs," which include, according to that rule's advisory committee note, "damages, attorney's fees and other expenses incurred by an appellee." Fed. R. App. P. 38; *id.* advisory committee's note (1967 adoption). The discrepancy between the use of the term "costs" in Rule 39 and its use in Rule 38 strongly suggests that the rules' drafters did not intend for Rule 39 to create a uniform defini-

tion of "costs," exclusive of attorney's fees. *See Singer v. Shannon & Luchs Co.*, 868 F.2d 1306, 1307 (D.C. Cir. 1989) (per curiam) ("Other circuit courts [including the Ninth Circuit] have held that while the term 'costs' in Rule 39 excludes attorneys' fees, the reference in Rule 38 to 'just damages and single or double costs' comprises them.").

Third, while some commentators have criticized *Adsani* and *Pedraza* for "attach[ing] significant consequences to minor and quite possibly unintentional differences in the wording of fee-shifting statutes," 16A Wright, Miller & Cooper, *supra*, § 3953, *Marek* counsels that we must take fee-shifting statutes at their word. 473 U.S. at 9. This approach is consistent with the "ancient and sound rule of construction that each word in a statute should, if possible, be given effect." *Crandon v. United States*, 494 U.S. 152, 171 (1990) (Scalia, J., concurring in the judgment).

Fourth, allowing district courts to include appellate attorney's fees in estimating and ordering security for statutorily authorized costs under Rule 7 comports with their role in taxing the full range of costs of appeal. In practice, district courts are usually responsible at the conclusion of an appeal for taxing all appellate costs, including attorney's fees, available to the prevailing party under a relevant fee-shifting statute. *See Perkins v. Standard Oil Co. of Cal.*, 399 U.S. 222, 223 (1970) ("The amount of the award for [appellate] services should, as a general rule, be fixed in the first instance by the District Court, after hearing evidence as to the extent and nature of the services rendered.").

B.   Attorney's Fees Under Section 4 of the Clayton Act

Plaintiffs-Appellees contend that the portion of the district court's Rule 7 bond that included security for appellate attorney's fees was proper because the fee-shifting provision in Section 4 of the Clayton Act, 15 U.S.C. § 15(a), includes attorney's fees as recoverable costs. We agree that Section 4

includes attorney's fees as costs, but conclude that attorney's fees would not be recoverable under Section 4 against Appellant Wilkinson. We therefore hold that the district court erred when it included anticipated appellate attorney's fees in its calculation of the amount of the Rule 7 bond.

Section 4 provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." *Id.; see Marek*, 473 U.S. at 8 (noting that Clayton Act Section 4 "include[s] attorney's fees as part of awardable 'costs' "); *Perkins*, 399 U.S. at 223 (holding that Section 4 of the Clayton Act covers costs on appeal). Inclusion of security for appellate attorney's fees in a Rule 7 bond may thus be appropriate in cases where the appellee is eligible to collect costs on appeal under Section 4.

**[4]** However, unlike some other fee-shifting provisions, Section 4 is asymmetrical. *Compare*, 15 U.S.C. § 15(a), *with* 17 U.S.C. § 505, *and* 42 U.S.C. § 1988(b); *see also Aetna Cas. & Sur. Co. v. Liebowitz*, 730 F.2d 905, 908 (2d Cir. 1984). Clayton Act attorney's fees awards are "available only to plaintiffs who prove an antitrust injury." *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 418 (3d Cir. 1993); *see also In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 130 n.12 (9th Cir. 1973); *MCA Television Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1281 n.21 (11th Cir. 1999); *Sciambra v. Graham News*, 892 F.2d 411, 415-16 & n.1 (5th Cir. 1990). Section 4 is intended not only "to encourage private enforcement of the antitrust laws" and "to insulate the treble damages award from the costs of obtaining recovery," but also "to deter violations of the antitrust laws by requiring the payment of that fee by a losing defendant." *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1357 (9th Cir. 1998). We have gone so far as to describe a Section 4 fee award as "a part of the penalty for violating the antitrust laws." *Id.* at 1358.

**[5]** Thus, a district court can order only a losing defendant — the party that has violated antitrust laws — to pay attorney's fees under Section 4. *See Byram Concretanks, Inc. v. Warren Concrete Prods. Co.*, 374 F.2d 649, 651 (3d Cir. 1967) (as amended); *see also J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1194-95 (5th Cir. 1986); *cf. Olympia Co. v. Celotex Corp.*, 771 F.2d 888, 892-93 (5th Cir. 1985) (awarding fees to prevailing defendants based not on Section 4 but rather to sanction plaintiff and his attorney).

**[6]** The asymmetry of Section 4 is consistent with the purpose of the Clayton Act as well as settled precedent. While the interests of an antitrust settlement class member who challenges the settlement on appeal may well be adverse to the interests of a class member who supports it, both remain the alleged victims, rather than perpetrators, of the claimed antitrust injury. Ordering one class member to pay other class members' appellate attorney's fees because of a disagreement about the propriety of settlement would not serve the purpose of Section 4 to penalize and deter those who have violated the antitrust laws. Thus, even assuming, arguendo, that Plaintiffs-Appellees are otherwise eligible to collect fees under Section 4, they could not collect them from Wilkinson. *Cf. City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468-69 (2d Cir. 1974) (holding that Section 4 does not authorize award of attorney's fees to a plaintiff who settles his claim with the defendant), *overruled on other grounds, as recognized by Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058 (2d Cir. 1989).

## C. Attorney's Fees Based on Frivolous Appeal

**[7]** As an alternate basis for including security for appellate attorney's fees in its Rule 7 bond, the district court concluded that we were likely to find Wilkinson's appeal on the merits frivolous and to award attorney's fees as a sanction under Rule 38. While we affirm the district court's decision on the merits, we do not conclude that Wilkinson's appeal is frivo-

lous. Even if we were to conclude that her appeal was frivolous, however, we would reverse the district court's inclusion of appellate attorney's fees on that basis.

Award of appellate attorney's fees for frivolousness under Rule 38 is highly exceptional, making it difficult to gauge prospectively, and without the benefit of a fully developed appellate record, whether such an award is likely. *Cf. Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648-49 (9th Cir. 1997) (discussing the "high threshold" for sanctions in district court under Fed. R. Civ. P. 11). Moreover, a Rule 7 bond including the potentially large and indeterminate amounts awardable under Rule 38 is more likely to chill an appeal than a bond covering the other smaller, and more predictable, costs on appeal. Finally, in contrast to ordinary fee-shifting and cost provisions, Rule 38 authorizes an award of appellate attorney's fees not simply as incident to a party's successful appellate defense or challenge of a judgment below, but rather as a sanction for improper conduct on appeal. While Rule 39 expressly authorizes the district court to tax certain costs on appeal, and while it is usually the district court that ultimately determines entitlement to expenses including attorney's fees on appeal under fee-shifting statutes, only the court of appeals may order the sanction of appellate attorney's fees under Rule 38. *See* Fed. R. App. P. 38.

**[8]** We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38. *In re Am. President Lines*, 779 F.2d at 717. Allowing districts court to impose high Rule 7 bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination. *Id.* at 717, 718; *see also Adsani*, 139 F.3d at 79 ("[A]ny attempt by a court at preventing an appeal is unwar-

ranted and cannot be tolerated.") (quoting *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974)).

### D. Security for Attorney's Fees Under Rule 7 Not Mandatory

Although we hold that security for appellate attorney's fees may be included in a Rule 7 bond, we emphasize that the rule states that a district court "may," rather than "shall," impose a bond for costs on appeal. Fed. R. App. P. 7. A district court need not order that appellate attorney's fees be secured in a Rule 7 bond merely because an applicable fee-shifting provision includes them as part of its definition of costs. Requiring security for anticipated appellate attorney's fees under Rule 7 may be improper, notwithstanding an applicable fee-shifting provision, where other factors, such as financial hardship, indicate that the bond would unduly burden a party's right to appeal. *See* 139 F.3d at 76-78.

### E. Motion to Dismiss for Failure to Post the Bond

**[9]** Finally, we address Plaintiffs-Appellees' motion to dismiss Wilkinson's merits appeal for failure to post the Rule 7 bond. Where an appellant has failed to pay an appeal bond, it is within our sound discretion to dismiss the appeal. *Hagan v. Whitman*, 356 F.2d 742, 745 (9th Cir. 1966) (per curiam). However, Federal Rule of Appellate Procedure 3(a)(2) provides that "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal." Thus, an appellant is not required to post a Rule 7 bond to perfect its appeal. *See also* Fed. R. App. P. 3(a) advisory committee's note (1967 adoption).

Our case law offers little guidance on how we should exercise our discretion when an appellant has failed to post a Rule 7 bond. *Hagan*, our most recent published opinion on this

question, is more than forty years old. In that case, we dismissed an appeal where appellants failed to post a bond for appellate costs ordered under former Federal Rule of Civil Procedure 73(e), on which the later-adopted Rule 7 was modeled. *Hagan*, 356 F.2d at 745. We did not offer specific reasons for our conclusion that dismissal was proper, other than noting that the bond default was part of a "pattern of many small or large careless or calculated errors made by appellants throughout this litigation[ ] both below and on appeal," and that the appeal "seem[ed] suspiciously like a frivolous appeal." *Id.* at 744-45.

More helpful than our decision in *Hagan* is a recent decision by the Sixth Circuit, *In re Cardizem CD Antitrust Litigation*, in which the court dismissed the appeal of a named plaintiff who objected to a proposed settlement in a nationwide antitrust class action based on the plaintiff-appellant's failure to post a Rule 7 bond of $174,429 covering security for "filing and brief preparation costs," "incremental administration costs," and "projected attorneys' fees." 391 F.3d at 814-15. The court first noted that the appellant had not made a "good faith proffer of a lesser [undisputed] amount" or sought a stay in the district court. *Id.* at 818. It then considered as relevant factors, "prejudice to the other parties, the demonstrated justification for the failure to post the bond, and the merits of the underlying appeal." *Id.* Concluding that none of these other factors weighed in the appellant's favor, the court elected to dismiss the appeal. *Id.*

**[10]** We conclude, on the facts of this case, that the factors discussed in *Cardizem* do not support dismissal of Wilkinson's appeal. First, in contrast to the appellant in *Cardizem*, Wilkinson did proffer payment of the undisputed portion of the bond, $2,000.00, to the district court clerk, which was refused. Wilkinson then moved in the district court to reduce the bond amount. When her motion was denied, she appealed the bond order. Although Wilkinson did not move to stay the bond, she did not simply "ignore [the] order," *id.*, but rather

made legitimate efforts to reduce its amount. Her diligence in this respect weighs against dismissal of her appeal.

**[11]** Second, in contrast to *Cardizem*, where the appellant "made no effort in the district court to justify her failure to post the bond," *id.*, Wilkinson has consistently argued that the amount of the bond was legally erroneous because neither Rule 7 nor Section 4 of the Clayton Act supports the district court's order requiring security for appellate attorney's fees. Although we have rejected Wilkinson's argument concerning Rule 7, we conclude that her reading of Clayton Act Section 4 is correct. While a meritorious legal argument for reducing the amount of a Rule 7 bond might not excuse its nonpayment in all circumstances, this factor weighs against dismissal here.

**[12]** Third, in contrast to *Cardizem* where the court concluded that the appellant's appeal lacked merit, Wilkinson's appeal raises legitimate questions about class certification, notice, and the settlement's fairness, reasonableness, and adequacy.

**[13]** Finally, we reject Plaintiffs-Appellees' argument that Wilkinson's failure to pay the bond has caused them undue prejudice by delaying completion of the settlement. Any delay in completion of the settlement stems from Wilkinson's appeal itself, not from her failure to pay the bond.

We therefore decline to dismiss Wilkinson's appeal on the merits.

## Conclusion

**[14]** For the foregoing reasons, we hold that the district court erred in including $40,000.00 in security for appellate attorney's fees in the $42,000.00 bond Wilkinson was ordered to pay under Rule 7. We accordingly vacate that portion of the bond. We decline to dismiss Wilkinson's appeal based on her

nonpayment of the bond and have decided the merits of the appeal in a concurrently filed memorandum disposition.

Appeal Bond Order VACATED in part; Motion to Dismiss Appeal on the Merits DENIED.